**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| TIFFANY A. ELLERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 2:12-CV-220 |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") to Plaintiff, Tiffany A. Ellerman ("Plaintiff"). For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is remanded for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

On August 17, 2009, Plaintiff applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 *et seq.*, and Supplemental Security income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. section 1383 *et seq*. Plaintiff alleged that her disability

began on June 14, 2005.  The Social Security Administration ("SSA") denied her initial application and also denied her claim on reconsideration.  Plaintiff requested a hearing, and on January 5, 2011, Plaintiff appeared in person, represented by counsel, at an administrative hearing before Administrative Law Judge ("ALJ") Kathleen Mucerino.  Plaintiff and her husband, Michael Ellerman ("Mr. Ellerman"), testified at the hearing, along with Leonard Fisher, Ph.D., a Vocational Expert ("VE").  On February 11, 2011, ALJ Mucerino issued a decision denying Plaintiff's claims, and finding her not disabled because she did not have a listing-level impairment or combination of impairments and she retained the functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Plaintiff requested that the Appeals Council review the ALJ's decision, but the request was denied.  Accordingly, the ALJ's decision became the Commissioner's final decision.  *See* 20 C.F.R. § 422.210(a).  Plaintiff has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Medical Evidence

Plaintiff was born on April 13, 1979, and was 31 years old when the ALJ rendered her decision, and 26 years old on her alleged onset date. (Tr. 421).  Plaintiff received her high school diploma and has completed two years of college.  (Tr. 181).  She is 4'11"

tall and weighs approximately 176 pounds. (Tr. 421). Plaintiff has no past relevant work as defined by 20 C.F.R. § 404.1565 and 416.965, but has been employed part-time as an allergy injection technician and auto yard office assistant, and full-time as a gas station cashier and hotel housekeeper. (Tr. 31, 176). Plaintiff has not engaged in substantial gainful activity since June 14, 2005, and she was insured through September 30, 2008. (Tr. 21, 23). ALJ Mucerino found that Plaintiff suffered from severe impairments including: bipolar disorder, anxiety with panic attacks and agoraphobia, poly substance dependence in early remission, and borderline personality disorder. (Tr. 23). ALJ Mucerino also found that Plaintiff suffered from non-severe impairments including: degenerative disc disease, insomnia, and obesity. (Tr. 24).

On February 5, 2007, Plaintiff presented to Cary Banka, LCSW, ("Banka") of Porter-Starke Services, Inc. ("Porter-Starke"), in Valparaiso, Indiana complaining of severe and frequent mood swings, insomnia, and symptoms of depression and mania, including panic with agoraphobia.[1] (Tr. 259). Banka's Diagnostic Impression indicated that Plaintiff suffered from Depressive Disorder, Panic Disorder with Agoraphobia, and Alcohol Abuse. (Tr. 263). Her Global Assessment of Functioning ("GAF") was listed at 55. (*Id.*).

On February 16, 2007, Plaintiff was seen by Dr. John Spores, PhD, JD, at Porter-Starke for further psychological evaluation.

---

[1] As Defendant correctly points out in his brief, there are no medical records from 2005-2006 in the record. (DE #22, p. 2).

(Tr. 255-56). Plaintiff told Dr. Spores that she experienced mood swings, sleep problems, and had a history of self-mutilation. (Tr. 254). At that time, Plaintiff was taking Ativan for anxiety. (Tr. 255). Dr. Spores observed that Plaintiff's mood was moderately depressed, that her short-term and intermediate memory functions were mildly impaired, that her long term memory was normal, and that she functioned with intellectual abilities in the high to average range. (Tr. 254).

Dr. Spores indicated a working diagnosis of Mixed Anxiety-Depressive Disorder with the need to rule out Bipolar Mood Disorder, Cyclothymic Disorder, Generalized Anxiety Disorder, Attention-Deficit Hyperactivity Disorder, and Borderline Personality Disorder. (Tr. 256). Dr. Spores listed Plaintiff's GAF at 35 and ordered additional psychological testing. (*Id.*).

After the completion of additional testing, Dr. Mitchell R. Goldstein, M.D., a psychiatrist at Porter Starke, diagnosed Plaintiff with Cyclothymia, Anxiety Disorder NOS, and Borderline Personality Disorder. (Tr. 274). Dr. Goldstein noted Plaintiff's suicidal ideation, significant anxiety, feelings of panic, and assigned a GAF of 55. (Tr. 270 – 72). On March 14, 2007, Dr. Goldstein prescribed Plaintiff Zoloft (100mg daily) and Trazodone (50mg nightly). (Tr. 272). On August 8, 2007, Dr. Goldstein noted that Plaintiff responded well to the Zoloft and Trazodone, and was having no issues with drugs or alcohol. (Tr. 274). Dr. Goldstein also added Lithium at 450mg twice daily. (*Id.*). Plaintiff

discovered she was pregnant in March 2009 and stopped taking her medication. (Tr. 320, 369).

On April 20, 2007, Plaintiff was again examined by Dr. Spores. (Tr. 49). Dr. Spores noted that her mood was moderately dysphoric and depressed, but found that Plaintiff's thought processes were normal; that her short-term memory was only mildly impaired; that her long-term memory was normal; and that her intellectual abilities were within the average range. (Tr. 249-50, 253). Dr. Spores also found that Plaintiff did not exhibit signs of ADHD and that her memory indicated "adequate attention and concentration and no evidence of distractibility." (Tr. 251-53).

On September 29, 2009, Plaintiff was evaluated at the request of the Disability Determination Bureau ("DDB") by Dr. Virginia Mullin, PsyD, HSPP, a psychologist. (Tr. 374). Dr. Mullin noted that Plaintiff had a history of Bipolar Disorder, anxiety, and panic attacks, that Plaintiff had attempted suicide four or five times in the past, and that Plaintiff has engaged in self-mutilation since the age of three. (*Id*). Dr. Mullin also noted that Plaintiff experienced "nasty mood swings" as a result of not taking her medication due to her pregnancy. (*Id*.) Dr. Mullin diagnosed Plaintiff with Bipolar Disorder NOS, a history of poly substance abuse in remission, some borderline characteristics, and pregnancy. (*Id*.).

On October 5, 2009, Plaintiff was evaluated by Dr. Teofilo Bautista at the request of the DDB, in response to Plaintiff's

application for DIB and SSI benefits. (Tr. 369). Dr. Bautista noted that Plaintiff claimed that she suffered from abrupt mood swings, that she was depressed most of the time, and that she would sleep and isolate herself when she was depressed. (*Id.*). Dr. Bautista also noted that Plaintiff complained of lower back pain and that Plaintiff was "unable to do range of motion of the back due to pregnancy." (Tr. 370). Dr. Bautista provided the following impressions: (1) History of bipolar affective disorder, type II; (2) Borderline personality disorder; (3) Low back pain; (4) History of Insomnia; and (5) Pregnancy. (Tr. 371).

On October 30, 2009, Dr. Stacia Hill, Ph.D., a state agency reviewing physician, completed a mental residual functional capacity report and a psychiatric review technique report. (Tr. 377-94). Dr. Hill's report was based on existing medical records, not on a physical examination of Plaintiff. (*Id.*). Dr. Hill provided a diagnosis of Bipolar Disorder NOS, history of poly substance abuse in remission, and listed Plaintiff's GAF at 40. (Tr. 393). Dr. Hill indicated that Plaintiff was moderately limited in her ability to do the following activities: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general

public; and (6) respond appropriately to changes in the work setting. (Tr. 391-92). Dr. Hill found Plaintiff's allegations credible and consistent with medical evidence. (Tr. 393). However, Dr. Hill found Plaintiff's allegations regarding level of severity of functioning only partially credible because her activities of daily living were within normal limits and she could complete simple tasks. (*Id*.). Finally Dr. Hill found that Plaintiff could understand, remember, and carry out simple tasks; that Plaintiff could relate on at least a superficial basis on an ongoing basis with co-workers and supervisors; that Plaintiff could attend to task for sufficient periods of time to complete tasks; and that Plaintiff could manage the stresses involved with simple work. (*Id*). On February 4, 2010, Dr. Joelle Larson, Ph.D., a state agency reviewing physician, confirmed Dr. Hill's report. (Tr. 404).

On December 30, 2009, after the birth of her child, Plaintiff returned to Dr. Goldstein with the desire to be back on medication. (Tr. At 396). Dr. Goldstein, provided a diagnosis of Bipolar Disorder NOS, noted that Plaintiff suffered from increased symptoms, and listed Plaintiff's GAF at 50. At that time, Dr. Goldstein placed Plaintiff on Seroquel XR, 200mg daily, and scheduled Plaintiff for a follow-up visit in one month. Plaintiff returned to Dr. Goldstein on February 10, 2010 and March 24, 2010 and was placed back on Zoloft (50mg daily) in addition to Seroquel XR. (Tr. 417-420).

On April 29, 2010, Dr. Goldstein completed a mental residual functional capacity questionnaire in his capacity as Plaintiff's treating psychiatrist. (Tr. 406–10). Dr. Goldstein provided a diagnosis of Bipolar Disorder NOS, Panic Disorder with Agoraphobia, and Borderline Personality Disorder. (Tr. 406). Dr. Goldstein also indicated Plaintiff suffered from a variety of symptoms including: (1) Appetite disturbance with weight change; (2) Decreased energy; (3) Blunt, flat or inappropriate affect; (4) Feelings of guilt or worthlessness; (5) Generalized persistent anxiety; (6) Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); (7) Motor tension; (8) Easy distractibility; (9) Sleep disturbance; and (10) Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. (Tr. 407).

Dr. Goldstein indicated that Seroquel stabilized Plaintiff's mood swings, but that it caused her to experience dizziness, drowsiness and fatigue. (Tr. 406). He also noted that Plaintiff's anxiety and depression had increased, and that Plaintiff's Zoloft prescription was increased to 100mg daily. (*Id*.). Dr. Goldstein listed Plaintiff's GAF at 45 and indicated her prognosis was moderate to severe. (*Id*.). Dr. Goldstein opined that Plaintiff's depression and anxiety would prevent her from completing work in a

competent and timely manner, and, that her symptoms would likely cause her to be absent from work more than four days a month. (Tr. 406, 410). Dr. Goldstein offered no opinion on Plaintiff's work-related limitations. (Tr. 408-09). Finally, on May 20, 2010, Dr. Goldstein found that Plaintiff's depression had worsened and that her agoraphobia symptoms were continuing to develop. At that time, Dr. Goldstein provided a diagnosis of Bipolar Disorder II, Panic Disorder with Agoraphobia, Borderline Personality Disorder, Obesity, and listed a GAF of 45. (Tr. 416).

Plaintiff's Hearing Testimony

During the hearing before ALJ Mucerino, Plaintiff testified as follows. Plaintiff testified that her illness was cyclical in nature, causing her to have good days and bad days. (Tr. 42, 46). On a good day, Plaintiff is able to help her children get ready for school, tend to the house, play with her baby, and cook. (Tr. 42-43). Plaintiff testified that even on her good days she has severe anxiety that prevents her from driving, going to the park, and interacting with the public. (Tr. 43, 45-46, 49). Plaintiff also stated that she does not like being in social settings and that she watches movies, plays board games, and works on puzzles for entertainment. (Tr. 49).

On a bad day, which Plaintiff said she has one to three times per week, Plaintiff testified that she is assisted by her husband and mother with child care and housekeeping, that she would "snap

out at everybody about everything," and that she does not leave home. (Tr. 43, 46-47, 55-56). Her bad days can last up to four days in a row and she sometimes goes for days without sleeping, which forces her husband to stay home from work to take care of her and the children. (Tr. 46-47, 52).

Plaintiff also testified about her work history. From 1996 to 2002, she worked for her parents' auto parts business. (Tr. 47). Her last full time job was in 2004 at a gas station. (Tr. 44). She last worked in 2005 on a part time basis at a hospital doing patient registration but was fired for missing too much work. (Tr. 43-44).

Mr. Ellerman's Hearing Testimony

During the hearing before ALJ Mucerino, Mr. Ellerman confirmed that Plaintiff had ceased using alcohol and drugs and corroborated Plaintiff's testimony regarding the severity of her symptoms. (Tr. 56-57, 59). Mr. Ellerman testified that he witnessed Plaintiff engage in self-mutilation about one year prior to the hearing. (Tr. 64-65). Mr. Ellerman also testified that Plaintiff's bad days occur about twenty days per month, and, that on her bad days, Plaintiff's mother would remove the baby from the house if he was not around. (Tr. 56-58). During a one year period, Mr. Ellerman stated that he missed less than ten days of work to stay home and care for Plaintiff. (Tr. 64).

Vocational Expert's Hearing Testimony

The VE testified at the hearing as follows. Plaintiff's past work experience included work as an allergy injection technician (DOT #079.374-014; skilled work at the medium level of exertion), a self-service gas station attendant (DOT #915.477-010; semiskilled work at the light level of exertion), an office assistant (DOT #209.562-010; semiskilled work at the light level of exertion), a cleaner/housekeeper (DOT #323.687-014; unskilled work at the light level of exertion), a fast food worker (DOT #311.472-010; unskilled work at the light level of exertion), and an outpatient clerk (DOT #205.362-030, semiskilled sedentary work). (Tr. 68-69).

ALJ Mucerino posed a hypothetical regarding an individual of Plaintiff's age, educational experience, and work history, who is limited to medium-level exertion and has moderate impacts to mental health, concentration, persistence, and pace, and thus can only carry out short, simple one or two step rote, routine instructions or tasks, and who must work in a socially-limited environment with no public interaction. (Tr. 69). The VE testified that such an individual would be capable of working as a laborer, stores (DOT # 922.687-058), a kitchen helper (DOT #318.687-010), a packager/packer (DOT #920.587-018), or an industrial cleaner (DOT #381.687-018). (Tr. 70).

The ALJ then posed the same hypothetical individual, but limited to light-duty work and a limited-stress job that is not pace-based. (Tr. 71). The VE responded that such an individual

could still be employed as an industrial cleaner, and could also be employed as a cleaner, housekeeper and electronics worker (DOT #726.687-010). (Tr. 71-72).

Finally, the ALJ posed that same second hypothetical individual, but whose impairments caused him or her to miss an average of four days per month. (Tr. 72). The VE responded that if a person in an unskilled position missed more than one day per month, that person could not sustain competitive employment. (Tr. 72).

DISCUSSION

Standard of Review

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). This Court must affirm the Commissioner's factual findings if they are supported by substantial evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). While the ALJ "must build an accurate and logical bridge from the evidence to the conclusions," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). However, this Court reviews the ALJ's findings of law de novo and, if the ALJ makes an error of law, this Court may

reverse without regard to the volume of evidence in support of the actual factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Analysis of Social Security Act

To be considered for disability insurance benefits, a claimant must establish that she is disabled. To qualify as being disabled, the claimant must demonstrate that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1:         Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2:         Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3:         Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4:         Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the

> inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). *See also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Dixon*, 270 F.3d at 1176. If the claimant reaches step five, the burden shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

In this case, the ALJ found that Plaintiff suffers from the following severe impairments: bipolar disorder, anxiety with panic attacks and agoraphobia, poly substance dependence in early remission, and borderline personality disorder. (Tr. 23). The ALJ also found that Plaintiff suffers from the following non-severe impairments: degenerative disc disease, insomnia, and obesity. (Tr. 24).

The ALJ further found that Plaintiff did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id*. ALJ Mucerino then made the following Residual Functional Capacity (RFC) determination:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant must work in a socially limited environment with no contact with the general public and only necessary contact with co-workers and supervisors; and is only able to understand, remember and

consistently carry out short, simple one to two step rote
routine instructions or tasks.

(Tr. 25). Based on Plaintiff's RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that claimant can perform," including work as a laborer, a kitchen helper, a packer, and an industrial cleaner. (Tr. 31-32).

Plaintiff believes the ALJ committed several errors requiring reversal. Specifically, Plaintiff sets three main arguments. First, she alleges the ALJ improperly discounted the opinion of Dr. Goldstein as a treating physician. (DE #17, p. 12). Second, she contends the ALJ made an improper credibility finding. (*Id.*). Finally, Plaintiff claims the ALJ erroneously disregarded the VE's testimony. (*Id.*).

The Weight Given to Plaintiff's Treating Physician

Plaintiff argues the ALJ improperly discounted the opinion of her treating physician, Dr. Goldstein. (DE #17, p. 12). Specifically, Plaintiff argues that Dr. Goldstein's opinion should have been given controlling weight, rather than merely "some weight" as accorded by the ALJ. (DE #17, p. 13).

Social Security Ruling ("SSR") 96-2p provides that a treating physician's medical opinion must be given controlling weight if it is "well supported" and not "inconsistent with other substantial evidence in the case record." Furthermore, SSR 96-2p requires that the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

Furthermore, if the treating physician's opinion is not well supported or if it is inconsistent with the other substantial evidence, the ALJ must apply the following factors to determine the proper weight to give the opinion:

(1) The length of the treatment relationship and frequency of examination;

(2) The nature and extent of the treatment relationship;

(3) How much supporting evidence is provided;

(4) The consistency between the opinion and the record as a whole;

(5) Whether the treating physician is a specialist; and

(6) Any other factors brought to the attention of the Commissioner.

20 C.F.R. §§ 404.1527(d)(2) and 416.927(a)-(d). *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). It is reversible error for an ALJ to discount the medical opinion of a treating physician without applying this legal standard and for further failing to support the decision with substantial evidence. *Moss*, 555 F.3d at 561. *See also Puzino v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (finding the ALJ's rejection of a treating physician's mental residual

functional capacity questionnaire was not supported by substantial evidence); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision which "said nothing regarding this required checklist of factors.").

In the present case, the ALJ opined that: "Dr. Goldstein's opinion is given some weight. Dr. Goldstein exercised his professional judgment when rendering his opinion; however, his findings are not entirely consistent with the medical evidence of record." (Tr. 29). The Court finds the ALJ's explanation for only giving Dr. Goldstein's opinion "some" weight is not sufficient. The ALJ did not provide any specific reasons for discrediting Dr. Goldstein's opinion as required by SSR 96-2p.

Furthermore, even if Dr. Goldstein's opinion was not well supported or inconsistent with the other substantial evidence, the ALJ did not consider all of the factors set forth in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(a)-(d) in determining the proper weight to give to Dr. Goldstein's opinion. Specifically, the ALJ did not consider the length of the treatment relationship between Plaintiff and Dr. Goldstein, the nature and extent of the treatment relationship, the amount of evidence (or lack therefore) supporting Dr. Goldstein's opinion, or whether Dr. Goldstein was a specialist.

As explained in *Moss* and *Puzino*, ALJ Mucerino committed reversible errors by not properly considering the factors set forth in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(a)-(d). While the ALJ's conclusion may ultimately prove to be reasonable, the specific

reasons the ALJ had for discounting Dr. Goldstein's opinion are not communicated through his opinion. This Court agrees with Ellerman that, in this case, and finds that the ALJ failed to connect the dots. Because this constitutes legal error, this case must be remanded for further consideration.

Because this case must be remanded so the treating physician's opinions may be properly addressed, this Court specifically declines to rule on the other arguments submitted by Plaintiff as to why the ALJ's decision was incorrect.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is remanded for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

**DATED:  July 23, 2013**          /s/RUDY LOZANO, Judge
                                    **United States District Court**